# Richmond

## J. M. Noe v. J. H. Owen.

June 18, 1951.

Record No. 3781.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*James G. Martin & Sons, John J. Baecher* and *Francis S. Thompson,* for the appellant.

*V. C. Randall,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

J. H. Owen instituted this proceeding by filing a bill in chancery against J. M. Noe alleging breach of a partnership agreement by Noe, praying for a full and complete accounting of the business of the partnership, a settlement of accounts between the partners, and the dissolution of the partnership. The bill averred that the only debt of the partnership was the balance due on a note of the firm for $6,100, payable to Noe "in consideration for the building and equipment owned by the partnership."

The case was duly matured, and referred to a commissioner in chancery, with direction to take, state, and settle a complete account of the business of the partnership, its assets, liabilities, and the amount, if any, due the respective partners. Thereupon, Noe filed an answer denying that he or the partnership was in-

debted to Owen in any sum, and praying to be dismissed with his costs.

The commissioner, after giving notice to the parties, heard the testimony and filed his report together with the evidence. He reported that the sum of $2,618.48 was due by Noe to Owen in satisfaction of all of the latter's rights in the assets of the partnership. Noe excepted, the exceptions were overruled, the report confirmed, and Noe decreed to pay to Owen the above amount with interest and costs. From that decree Noe appealed.

There was little conflict in the evidence before the commissioner. A correct conclusion depends, as each of the parties concedes, upon the testimony of B. L. Gillroy, the business advisor and bookkeeper for the partnership, and upon the undisputed evidence of George H. Taylor, an appraiser of real estate, appointed by consent.

Owen and Noe for a long time had been personal friends. Owen was an automobile mechanic and had performed some services for Noe. On May 31, 1946, the two formed a partnership to be known as "Owens Auto Service," for the purpose of operating an automobile repair business. Their agreement, reached after numerous conferences, was reduced to writing, and reads as follows:

"GILLROY TAX SERVICE
Portlock Building
Norfolk, Va.
Telephone 2-3770
May 31, 1946

"A PARTNERSHIP AGREEMENT ENTERED INTO BETWEEN:
J. M. Noe and J. H. Owens
T/A Owens Auto Service
112 East 20th Street
Norfolk, Virginia

"It is agreed that J. M. Noe & J. H. Owens T/A Owens Auto Service is a fifty-fifty partnership which consists of a building cost value ($5050.84) and Equipment Inventory ($2524.13) which makes the total of ($7574.97).

| | |
|---|---:|
| Building | $5,050.84 |
| Equipment | 2,524.13 |
| Total | $7,574.97 |

"It is further understood and agreed that J. H. Owens is to receive fifty (50) dollars per week for working and managing the Owen Auto Service. This fifty (50) dollars per week is to be in addition to his fifty (50) percent interest in the partnership.

"J. M. Noe advanced sixty-one hundred dollars ($6100.00) which is secured by a note and this note is to (be) liquidated from the profits until it is paid in full. No profit is to be divided between the partners until the loan is paid in full to Mr. Noe. After this note is paid in full the profits are to be split on a fifty-fifty basis between J. M. Noe & J. H. Owens the partners.

> J. M. Noe
> J. M. Noe, Partner
> J. H. Owens
> J. H. Owens, Partner."

On the same date, a note for $6,100.00, payable to the order of Noe, was signed by Owen and delivered to Noe.

The building mentioned was constructed and owned by Noe. The equipment was also owned by him. There is some oral evidence that the amount of the note was based on Noe's estimate of the sum expended by him, as of the date of the partnership contract, in constructing the building, and that some additional sum would be paid him for the equipment. Owen denied any agreement to reimburse Noe in any sum other than the amount of the note. The commissioner reported that: "There are no debts owing by the partnership, with the exception of the $6,100 note which was not properly taken into consideration by the firm." He gave no consideration to the claim that Noe was to be paid an additional sum for the equipment. Noe took no exception to the commissioner's action in the latter matter. Noe, in the statement of facts in his brief, merely says that the commissioner in allowing credits to Owen "left out of account" appellant's contribution of the equipment to the partnership.

The partners began operation in the building. The building was on land leased to Noe and Owen for three years, with the privilege of renewal for three years, subject to certain rights in case of cancellation. The active operation of the business was put in the hands of Owen. Owen kept a record of the merchandise purchased, operating expenses, personal drawings, payments for labor, bills due and payable, and money received, on daily sheets. With the full consent and agreement of Owen, Noe employed B. L. Gillroy as business advisor and bookkeeper

for the partnership. Cash receipts of the partnership and business reports were turned over weekly or bi-weekly by Owen to Noe. Noe, withholding the cash, gave the reports to Gillroy, with a statement of the cash receipts. No bank account was opened in the name of the firm, Noe saying that there was never a sufficient amount on hand to justify such an account. All monies paid to Noe were carried in his personal account and all bills paid through that account. No division of funds was made between the partners. All of the records of the firm were open to both partners, copies being kept at their service station. The only information which Gillroy had in keeping the books and in making income tax statements was from information supplied by the partners. There was no objection to the manner in which they were kept or as to their contents, nor is there any contention by either party that the Gillroy records were incomplete or incorrect.

The partnership existed from May 31, 1946, to May 31, 1948, exactly two years. The books were kept as of 1946, 1947, and 1948. Illustrative of the records are the profit and loss statements prepared by Gillroy.

For the period beginning June 1, 1946, and ending December 31, 1946, there is shown:

| | | |
|---|---|---|
| Total income for period | | $19,384.89 |
| Cost of goods sold | | 9,650.89 |
| | | |
| Total gross profits | | $ 9,734.00 |
| Business expenses, including payroll | $ 7,309.67 | |
| $50 weekly payment to Owen | 1,550.00 | |
| Reserve for depreciation | 736.00 | |
| | | |
| Total expenses | $ 9,595.67 | 9,595.67 |
| | | |
| Net profit | | $ 138.33 |

For the calendar year 1947, the following is shown:

| | | |
|---|---|---|
| Total gross profits | | $14,659.35 |
| Business expenses, including payroll | $ 9,311.21 | |
| Weekly payments to Owen | 2,600.00 | |
| Reserve for depreciation | 1,472.42 | |
| | | |
| Total expenses | $13,383.63 | $13,383.63 |
| | | |
| Net profit | | $ 1,275.72 |

The net profit from January 1, 1948, to May 31, 1948, when the partnership ended amounted to $105.59, after giving consideration to reserve for depreciation of $736.00 and a payment of $1,415.40 to Owen as salary.

In recapitulation, the total net profit, after the allowance for depreciation, amounted to $1,519.64. The depreciation reserve for the three periods was $2,944.42.

A copy of the 1947 partnership return of income to the U. S. Treasury Department, prepared by Gillroy, and filed as an exhibit by Owen, shows that depreciation was taken at 20% per year on the building, valued at $6,100.00, with an estimated life of five years, and at 10% on the equipment, valued at $2,524.23, having an estimated life of ten years. The reserve was made to take care of a decline in the value of assets due to wear and tear, obsolescence and inadequacy. However, none of the amount of the depreciation reserve was, according to the records, expended. Carried as a reserve in bank, or in the treasury of the partnership, it would have been available as an asset. It belonged to the partnership wherever it was held.

On June 1, 1948, Noe informed Owen that he did not care to continue the partnership or put any more money in it because it was not showing a proper profit. Owen was told that if he desired to continue the business, he could do so. Owen was unable or unwilling to continue. Noe then took over the property of the partnership and continued its business. At the expiration of the partnership lease he obtained a new lease in his own name. Without his action the partnership lease would have lapsed, and the building would have become more or less worthless. Mr. George H. Talyor, the appraiser, said that when the partnership ended May 31, 1948, the building had a salvage value of only $50.00. However, he said, with the business viewed as a going concern, it was, subject to the right of a three-year renewal for the land it occupied, worth about $2,235.00. The equipment inventory, as of June 1, 1948, had a valuation of about $1,500.00, according to Noe.

None of the profits which came into the hands of Noe was applied on the note. None of the reserves for depreciation was expended by the partnership. They too came into the hands of Noe and he is accountable for them. No effort was made by Noe to segregate the funds in his hands. He said the books showed the disposition of the funds; but the books do not show

that either party received his share of the profits or that the depreciation reserve was divided between them. Consequently, Noe should be charged with the following items: Net profits $1,519.64; depreciation reserve $2,944.42; equipment $1,500.00; and $2,235.00, the value of the building to the business as a going concern, that is, with the total amount of $8,199.06. According to the record all of the above items came into his possession.

The note was, according to the allegation of the bill and the terms of the partnership agreement, a liability of the partnership. While the agreement provided that it was to be liquidated from the profits of the business, the fact that it was not, and probably could not have been so liquidated, did not cancel it any more than the failure of its liquidation denied Owen a one-half interest in the partnership assets. It was a debt recognized by the commissioner, although, as he said, its payment was not properly taken into consideration by the firm.

The only credits that could properly have been made on the note were the net profits for the three periods, amounting to $1,519.64. Against the four items amounting to $8,199.06 charged to Noe there should be offset $6,100, due to Noe by the partnership, on account of the note, thus leaving the sum of $2,099.06 due from Noe to the partnership. This latter amount is the net worth of the partnership assets after the payment of the note. Each party is entitled to one half, that is, $1,049.53. However, it is agreed that Owen was indebted to Noe in the sum of $363.55 on account of money advanced to the former personally. Therefore, Noe is indebted to Owen in the sum of $685.98 in full payment and satisfaction of all his rights in the assets of the partnership.

The commissioner reported that Owen was entitled "to one-half of the amount of $5,964.00, arrived at by including the value of the equipment and stock ($1,500.00), depreciation set aside on the stock and equipment ($2,944.42), and the total net profits," less $363.55 advanced by Noe to Owen, that is, to the sum of $2,618.48.

Thus, it will be seen that the commissioner credited the entire depreciation to the stock and equipment when the major portion was taken on account of the building. He treated the building as an asset for the purpose of creating a depreciation reserve, yet failed to include it as partnership property. The claim of Owen, in both his bill and testimony, that the building

was the property of the partnership was not denied by Noe. Under the partnership agreement it was as much the property of the firm as the equipment. Although the commissioner reported the $6,100 note as a debt of the firm, given in consideration of the contribution of the building by Noe to the partnership, it is obvious that he failed to take the debt into consideration in arriving at the net assets of the firm. Since his conclusion was clearly wrong and contrary to the evidence, the trial court erred in approving his report. Accordingly, its finding with respect to the amount due from Noe to Owen must be reversed. Section 8-250, Code of Virginia, 1950; *Gilmer* v. *Brown,* 186 Va. 630, 44 S. E. (2d) 16; *Roark* v. *Shelton,* 169 Va. 542, 194 S. E. 681.

We are further of opinion, in view of the facts, that the cost of this proceeding should be borne equally by the parties.

There being sufficient evidence to enable us to decide the case on its merits, a decree will be entered here adjudging that J. H. Owen recover from J. M. Noe the sum of $685.98, the amount which the commissioner should have found to be due by Noe to Owen, with interest from this date; that each party pay one-half of the costs of this proceeding; and the partnership heretofore existing between Owen and Noe be dissolved. Section 8-493, Code of Virginia, 1950.

*Decree reversed and final decree.*